FILED
2023 Oct-20 PM 03:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **EDWIN ARTIS PETTAWAY,** | ] | |
| | ] | |
| **Movant,** | ] | |
| | ] | |
| v. | ] | 2:22-cv-08025-ACA |
| | ] | |
| **UNITED STATES,** | ] | |
| | ] | |
| **Respondent.** | ] | |

## MEMORANDUM OPINION

A jury found Movant Edwin Artis Pettaway guilty of possession with intent to distribute twenty-eight grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack") and possession of a firearm in furtherance of a drug trafficking crime. *United States v. Pettaway*, no. 18-cr-586-ACA-JHE, doc. 54 (N.D. Ala. July 17, 2019); *see also id.*, doc. 1 (N.D. Ala. Nov. 29, 2018).[1] The court sentenced Mr. Pettaway to 174 months' imprisonment. (*Pettaway* doc. 69 at 2). Mr. Pettaway now moves to vacate his sentence, under 28 U.S.C. § 2255, on four grounds: (1) the court plainly erred by allowing multiple witnesses to present mixed fact and expert testimony without a cautionary instruction; (2) trial counsel provided ineffective assistance by failing to object to

---

[1] The court will cite documents from Mr. Pettaway's criminal proceeding as "*Pettaway* doc. __."

the mixed fact and expert testimony; (3) admission of hearsay about what a non-testifying, unidentified confidential informant said violated the Confrontation Clause; and (4) trial counsel provided ineffective assistance by failing to object to the improper testimony. (Doc. 3 at 12–14). He also seeks appointment of counsel. (Doc. 17). Because Mr. Pettaway's ineffective assistance claims fail on the merits and his other claims are procedurally defaulted, the court **WILL DENY** the § 2255 motion and **WILL DENY AS MOOT** the motion for appointment of counsel. The court also **WILL DENY** a certificate of appealability.

## I. BACKGROUND

In 2018, a grand jury indicted Mr. Pettaway for possession with intent to distribute twenty-eight grams or more of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (*Pettaway* doc. 1). Before trial, Mr. Pettaway moved to suppress evidence seized from his house on the ground that the search warrant failed to establish probable cause. (*Pettaway* doc. 21). He also moved for disclosure of the identity of a confidential informant whose tip prompted the search warrant. (*Pettaway* doc. 22). The court denied both motions. (*Pettaway* docs. 34, 35).

At trial, Detective Daniel Walls testified that in October 2017, a confidential informant gave him a tip that crack was being distributed from a house in the East

Lake Woodlawn area. (*Pettaway* doc. 76 at 33). The confidential informant did two controlled buys at the house. (*Id.* at 34–36). Based on the results of testing those purchases, Detective Walls obtained a search warrant for the house. (*Id.* at 38–39).

In November 2017 the police conducted the search of the house. (*Pettaway* doc. 76 at 39–40). Six of the officers involved in the search testified at the trial. (*Pettaway* doc. 76 at 39–40, 95; *Pettaway* doc. 77 at 7–8, 32, 34–35, 55, 183–84). Two of the officers saw Mr. Pettaway exiting a room in the house. (*Pettaway* doc. 76 at 90; *Pettaway* doc. 77 at 15–16, 187–88). Although there were eleven other people in the house, Mr. Pettaway was the only person seen coming from that room. (*Pettaway* doc. 77 at 188); *see United States v. Pettaway*, 842 F. App'x 406, 408 (11th Cir. 2021).

In the room officers found chunks of a substance they suspected was crack, a digital scale, loose currency, several cell phones, a large bag, and a plastic container. (*Pettaway* doc. 76 at 91–92, 99–100, 102–03, 107; *Pettaway* doc. 56-10). The large bag contained more currency, several pill bottles with Mr. Pettaway's name on them, a credit card in Mr. Pettaway's name, and a loaded gun; nearby on the bed was a smaller bag full of hypodermic needles. (*Pettaway* doc. 76 at 102–06; *Pettway* doc. 56-14). The plastic container had small plastic baggies, which one officer testified were commonly used to package small amounts of crack for distribution. (*Pettway* doc. 76 at 107–08). Testing of the substance found in the room confirmed that it was

crack weighing approximately 230 grams. (*Pettaway* doc. 77 at 148–49; *Pettaway* doc. 56-12); *Pettaway*, 842 F. App'x at 408.

Tax records indicated that Mr. Pettaway owned the house. (*Pettaway* doc. 76 at 46). Mr. Pettaway's driver's license also used the house's address. (*Pettaway* doc. 77 at 65–66). In addition, a car found outside the house was registered to Mr. Pettaway at the house's address. (*Pettaway* doc. 77 at 108–09). That car contained another loaded firearm as well as a bag of hydrocodone. (*Id.* at 61, 103, 111–12; *Pettaway* docs. 56-30, 56-31).

One of the detectives—John Walker—testified about his personal observations during the search and about his expert opinion on crack distribution. (*See Pettaway* doc. 77 at 182–228). Because he was going to testify in both capacities, the court required the government to clearly delineate between his lay testimony and his expert testimony. (*See id.* at 195). The court also instructed the jury that Detective Walker had previously testified about "the facts that he saw and observed on that night" but that the government was going to try to qualify him "as an expert based on his experience in this field." (*Id.* at 195). The court informed the jury that "these are two totally separate things" and "[a]s with any other witness's testimony, you are responsible for deciding as to whether you should rely on that opinion." (*Id.* at 196). Detective Walker then testified about his opinion that the evidence found in the room Mr. Pettaway was found exiting, the rest of the house,

and Mr. Pettaway's car, was consistent with distribution. (*Pettaway* doc. 77 at 199–211).

The jury found Mr. Pettaway guilty of both charges. (*Pettaway* doc. 54). The court sentenced Mr. Pettaway to 114 months' imprisonment on the drug conviction, to be followed by 60 months' imprisonment on the gun conviction. (*Pettaway* doc. 69 at 2). Mr. Pettaway appealed his convictions, arguing that the court erred by denying his motion to suppress evidence, by denying his motion to disclose the confidential informant's identity, and by denying his motion for judgment of acquittal. *Pettaway*, 842 F. App'x at 408. The Eleventh Circuit affirmed. *Id.* at 413.

## II. DISCUSSION

Mr. Pettaway makes four claims to relief: one claim of violation of due process, one claim of violation of the Confrontation Clause, and two ineffective assistance claims based on counsel's failure to object to the purported constitutional violations. (Doc. 3 at 12, 14). For ease of analysis, the court will address the ineffective assistance claims first.

### 1. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of trial counsel, a movant must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient only if it "fell below an objective

standard of reasonableness and was outside the wide range of professionally competent assistance." *Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011) (quotation marks omitted). A movant can establish prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1148 (11th Cir. 2017) (quotation marks omitted).

> a. *Claim Two: Ineffective Assistance for Failing to Object to Mixed Fact and Expert Testimony*

In this claim, Mr. Pettaway argues that counsel was ineffective for failing to object to the admission of expert testimony from law enforcement officers who were actually testifying as fact witnesses. (Doc. 3 at 12–14). He contends that every officer did so, but he cites only the testimony of Officer Walker. (*Id.*).

As an initial matter, contrary to Mr. Pettaway's contention, the court gave the jury a cautionary instruction about Detective Walker's mixed fact and expert testimony. (Doc. 77 at 195–96). The court also required the government to clearly delineate between Detective Walker's fact testimony and his expert opinion. (*See generally id.* at 182–94 (fact testimony), 196–28 (expert testimony)).

Putting aside Detective Walker's testimony, Mr. Pettaway states in a conclusory manner that every other law enforcement officer also offered mixed fact and expert testimony, but the court did not give a cautionary instruction about their

6

testimony. (Doc. 3 at 12–14). The government concedes that "other government witnesses gave testimony that was to some extent 'blended.'" (Doc. 5 at 8). Specifically, the government points out that four of the officers, who testified as fact witnesses about the search of Mr. Pettaway's house, also briefly testified about the use of baggies for storage and distribution of drugs, the use of scales to weigh drugs, and the presence of "drug-related items, such as razor blades, the use of pens to smoke cocaine, digital scales, jeweler bags, drug packaging, and the use of EBT cards to purchase drugs." (*Id.* at 8–9).

The court agrees with the government that, even assuming trial counsel's failure to object to this mixed fact and expert testimony was deficient performance, Mr. Pettaway has not established prejudice. To do so, he would have to show "a probability sufficient to undermine confidence in the outcome." *Reaves*, 872 F.3d at 1148. In *United States v. Perry*, 14 F.4th 1253, 1265–73 (11th Cir. 2021), the Eleventh Circuit surveyed the caselaw relating to mixed fact and expert testimony and when its admission prejudices a defendant. In short, prejudice exists when "the government's case turned exclusively on the investigator's improper testimony." *Id.* at 1267. The improper mixed testimony in this case does not cast any doubt on the outcome. The officers properly testified that Mr. Pettaway owned the house, that his driver's license and car reflected the address of the house, that his car was registered to that address, that he was the only person seen leaving the room where the drugs,

drug paraphernalia, and gun were found, and that his bank card and prescription pill bottles with his name were found together with the drugs and gun. (*Pettaway* doc. 76 at 90, 99, 102–07; *Pettaway* doc. 77 at 15–16, 108–09); *see also Pettaway*, 842 F. App'x at 412–13. Even without the officers' improper expert testimony, sufficient evidence exists to support Mr. Pettaway's convictions. Because Mr. Pettaway cannot establish prejudice, his claim of ineffective assistance based on his attorney's failure to object to the mixed fact and expert testimony fails.

> b. *Claim Four: Ineffective Assistance for Failing to Object to Testimonial Hearsay*

In this claim, Mr. Pettaway contends that counsel was ineffective for failing to object to the introduction of testimonial hearsay, in violation of the Confrontation Clause. (Doc. 3 at 14). Mr. Pettaway's argument is not entirely clear. He seems to argue that because the evidence used against him at trial was obtained pursuant to a search warrant that relied on a tip from a confidential informant, counsel should have "insist[ed] that the government bring forth the [confidential informant] in order to confront them concerning what transpired." (Doc. 7 at 4; *see* doc. 3 at 17–18).

To the extent Mr. Pettaway is attempting to challenge the court's order denying his request for disclosure of the confidential informant's identity, he cannot do so. The Eleventh Circuit affirmed this court's ruling on direct appeal, *see Pettaway*, 842 F. App'x at 411, and he cannot relitigate that issue now, *see United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("Once a matter has been

decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255.") (alteration omitted).

Mr. Pettaway also appears to argue that Detective Walls's trial testimony about what the confidential informant told him violates the Confrontation Clause. (Doc. 3 at 17–18; *see* doc. 7 at 4). The Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause reaches only "testimonial statements." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004); *see also Samia v. United States*, 599 U.S. 635, 643–44 (2023). In the Eleventh Circuit, "the Confrontation Clause prohibits *only* statements that constitute impermissible hearsay because the Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *United States v. Pendergrass*, 995 F.3d 858, 879 (11th Cir. 2021) (cleaned up). "Hearsay is a statement, other than one made by a declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015).

At trial the only testimony about the confidential informant came from Detective Walls. (*Pettaway* doc. 76 at 33–39). According to Detective Walls, after the confidential informant gave him a tip that crack was being distributed from a house in the East Lake Woodlawn area, the informant did two controlled buys at the house. (*Id.* at 33–36). As a result of those controlled buys, Detective Walls got a

9

search warrant for the house. (*Id.* at 38–39). That was the extent of Detective Walls's testimony about the confidential informant.

The Eleventh Circuit "has long recognized that statements by out of court witnesses to law enforcement officials may be admitted as non-hearsay if they are relevant to explain the course of the officials' subsequent investigative actions," so long as "the probative value of the evidence's non-hearsay purpose is not substantially outweighed by the danger of unfair prejudice caused by the impermissible hearsay use of the statement." *United States v. Jiminez*, 564 F.3d 1280, 1288 (11th Cir. 2009) (quotation marks and alteration omitted). Under this rule, Detective Walls's testimony was not hearsay because it was admitted to explain his investigative actions. Moreover, to the extent the statement about crack being distributed from the house constituted impermissible hearsay, the probative value of providing context for the search of the house outweighed any prejudice. Detective Walls did not testify that the confidential informant told him anything about Mr. Pettaway and the other evidence at trial came not from hearsay, but from fact witnesses testifying about what they saw and found in the house. For the same reason, Mr. Pettaway cannot establish that counsel's failure to object to the testimony prejudiced his defense to the extent required to establish ineffective assistance. *See Strickland*, 466 U.S. at 687; *Reaves*, 872 F.3d at 1148.

As a final matter, within this claim Mr. Pettaway appears to argue that trial counsel was ineffective because "evidence available to trial counsel but not presented at trial would have demonstrated that the person actually seen coming from the room was" someone else. (Doc. 3 at 16). In support, Mr. Pettaway states (1) there was no evidence Mr. Pettaway used the nickname "Fat"; (2) there was evidence someone else who was "large and fat" used the nickname "Fat"; and (3) "body camera footage of the police" would have proved Mr. Pettaway was not the person who walked out of the room. (Doc. 3 at 16; *see also* doc. 8 ¶¶ 9–11). It is not clear how this argument relates to the Confrontation Clause or any testimonial hearsay. Nevertheless, in the interest of completeness the court will address the argument.

Mr. Pettaway can show neither deficient performance nor prejudice based on counsel's failure to present evidence about the nickname "Fat" or the lack of body camera footage from the police. The nickname played no role in the trial, so any testimony about who used that nickname would have been irrelevant. And multiple officers testified that they were not wearing body cameras, while Mr. Pettaway has offered nothing more than a conclusory assertion that body camera footage exists. (*Pettaway* doc. 76 at 79, 111–12, 116; *Pettaway* doc. 77 at 26). As such, to the extent Mr. Pettaway intended to assert an ineffective assistance claim based on his argument about the failure to present that evidence, such a claim would fail.

11

2. Claims One and Three

In his remaining claims, Mr. Pettaway contends that the presentation of mixed fact and expert testimony violated his due process rights and that denial of his right to question the confidential informant denied him his right to present a complete defense. (Doc. 3 at 12, 14). He concedes that he never raised either of these claims in his direct appeal. (*Id.* at 22, 25). As a result, these claims are procedurally defaulted. *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) ("Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.").

A defendant can avoid a procedural default by showing "cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error" or the existence of "a constitutional violation [that] probably resulted in the conviction of one who is actually innocent." *Id.* (quotation marks omitted). Mr. Pettaway arguably asserts both exceptions.

First, Mr. Pettaway argues in his motion that he was wrongly convicted because someone else was actually found exiting the room where the drugs and gun were found. (Doc. 3 at 16). But "[t]o show actual innocence of the crime of conviction, a movant must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of the new

evidence of innocence." *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (quotation marks and alteration omitted). Mr. Pettaway's conclusory assertion of his innocence, without any supporting evidence, is insufficient to carry that burden.

Next, Mr. Pettaway contends that the failure of his trial counsel to raise these two constitutional claims constitutes cause and prejudice excusing his procedural default. (Doc. 3 at 27). "Ineffective assistance of counsel may satisfy the cause exception to a procedural bar. In order to do so, however, the claim of ineffective assistance must have merit." *Nyhuis*, 211 F.3d at 1344 (citation omitted). As explained above, neither of Mr. Pettaway's ineffective assistance claims have merit. Accordingly, he cannot use them to avoid his procedural default. The court therefore **WILL DENY** Mr. Pettaway's § 2255 motion.

3. Appointment of Counsel

Mr. Pettaway has moved for appointment of counsel. (Doc. 17; *Pettaway* doc. 95). The motion's caption expressly identifies both his criminal case and his civil case. (Doc. 17 at 1; *Pettaway* doc. 95 at 1). In part he seeks appointment of counsel to assist him with his § 2255 motion, and in part he seeks appointment of counsel to assist him with a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. 17 at 2; *Pettaway* doc. 95 at 2). Although the motions are identical, the court must resolve each differently depending on the case in which it was filed. The court

will enter a separate order in the criminal case addressing the part of Mr. Pettaway's motion relevant to that case; this memorandum opinion addresses only the part of Mr. Pettaway's motion relevant to his § 2255 motion.

As an initial matter, the court notes that Mr. Pettaway did not sign his motion. (Doc. 17 at 3; *Pettaway* doc. 95 at 3). This failure violates Federal Rule of Civil Procedure 11, which requires that "[e]very pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). If a paper lacks a signature, the court must strike it "unless the omission is promptly corrected after being called to the attorney's or party's attention."

The court need not strike Mr. Pettaway's motion for appointment of counsel because the motion is moot in any event. The court has determined that it must deny the § 2255 motion, so the court could not grant appointment of counsel even if the motion were properly signed. Accordingly, the court **DENIES** the motion for appointment of counsel in the civil case **AS MOOT**.

### III.   CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing § 2255 Cases requires the court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2255 Cases, Rule 11(a). The court may issue a certificate of appealability "only if the applicant has made a substantial showing of

the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 338 (2003) (quotation marks omitted). This court finds that Mr. Pettaway's claims do not satisfy either standard. The court **WILL DENY** a certificate of appealability.

## IV. CONCLUSION

The court **WILL DENY** Mr. Pettaway's § 2255 motion and **WILL DENY** him a certificate of appealability. The court **WILL DENY AS MOOT** Mr. Pettaway's motion for appointment of counsel in the civil case. The court will enter a separate final order consistent with this opinion.

**DONE** and **ORDERED** this October 20, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE